72 F.3d 135
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Chris BRASSEUR, Plaintiff-Appellant,
v.
EMPIRE TRAVEL SERVICE, INC.; Empire Tours Incorp., a
corporation; GIZELLE FRIEDMAN, Individually and dba Empire
Tours, Compania Mexicana de Aviacion, S.A., a foreign
corporation, companies 1 through 25 and Does 1 through 100,
inclusive; Compania Mexicana de Aviacion, S.A., Defendants-Appellees.
 No. 94-15905.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 15, 1995.
Decided Dec. 15, 1995.
 
 1
 Before: SCHROEDER and ALARCON, Circuit Judges, and PANNER,* Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Chris Brasseur appeals from the judgment entered in favor of Compania Mexicana de Aviacion ("Mexicana"), Empire Travel Service, Inc. and Empire Tours (jointly "Empire Travel"). Brasseur contends that: (1) the district court erred in applying an "ordinary" standard of care to Mexicana's conduct; (2) the district court's findings were unsupported by the evidence; (3) the district court erred in instructing the jury to determine whether Empire Travel was Brasseur's agent; (4) the district court abused its discretion by giving misleading jury instructions; and (5) the district court erred in granting Empire Travel's motion for judgment as a matter of law. We affirm.
 
 I.
 
 4
 Brasseur contends that the district court, sitting as the trier of fact, applied the incorrect standard of care to Mexicana's conduct. She argues that Mexicana, as her carrier, owed a heightened duty of care that it violated when it discharged her in Cancun after hurricane warnings had been issued for the area, and failed to warn her of the approaching hurricane. Vollendorff v. United States, 951 F.2d 215, 217 (9th Cir.1991).
 
 
 5
 It is well established that a carrier owes a passenger "the highest degree of care." Marshall v. United Airlines, 110 Cal.Rptr. 416, 418 (Cal.Ct.App.1973). "This rule applies while the passengers are in transitu, and until they have safely departed from the carrier's vehicle." Id. "[U]ntil the passenger reaches a place outside the sphere of any activity of the carrier which might reasonably constitute a mobile or animated hazard to the passenger the rule of utmost care and diligence ... still applies." Id. at 419 (quoting Brandelius v. City & County of San Francisco, 306 P.2d 432, 436 (Cal.1957)). The rationale for this heightened standard of care is that during travel a passenger is exposed to numerous hazards while his or her freedom of movement is entirely under the control of the carrier. Orr v. Pacific Southwest Airlines, 257 Cal.Rptr. 18, 21 (Cal.Ct.App.1989). This duty of care does not end absolutely when the passenger alights from carriage. Parker v. City & County of San Francisco, 323 P.2d 108, 112-13 (Cal.Dist.Ct.App.1958) (railway liable for discharging passenger into unsafe street). However, once the passenger is discharged into a relatively safe space, the hazards incident to the journey, as well as the carrier's control over the passenger, cease to exist. Any subsequent duty of care owed by the carrier is thus no greater than that of ordinary or reasonable care. Orr, 257 Cal.Rptr. at 21.
 
 
 6
 This court has recognized that a common carrier's duty of care may include warning the passenger of reasonably foreseeable risks that may be encountered during transportation or at the terminus. Rookard v. Mexicoach, 680 F.2d 1257, 1260 (9th Cir.1982) (citing Fleming v. Delta Airlines, 359 F.Supp. 339, 341 (S.D.N.Y.1973) (duty to inform passenger of previously forecast turbulence); Bullock v. Tamiami Trail Tours, Inc., 266 F.2d 326, 332 (5th Cir.1959) (duty to warn black couple of risk of assault on bus traveling through the South); Werndli v. Greyhound Corp., 365 So.2d 177, 178 (Fla.Dist.Ct.App.1978) (duty to warn passenger that she would be discharged at closed, locked and darkened terminal)). Like the carrier's heightened duty to protect passengers, the carrier's duty to warn terminates once the passenger is discharged into a relatively safe space. See Rookard, 680 F.2d at 1260 (no duty to warn plaintiffs of dangers they might encounter after being discharged from bus).
 
 
 7
 Brasseur does not contend that she was exposed to danger during the flight, the landing of the airplane, or in disembarking. Rather, Brasseur contends that the airline breached its duty to her by discharging her into "unsafe surroundings" by leaving her at the Cancun airport after hurricane warnings had been issued for the area. We disagree. When the airplane landed, there was no rain or storm within twenty miles of the airport. Once the airline delivered Brasseur to the Cancun airport safely, its heightened duty as a carrier ceased. Because the hurricane did not present a risk to Brasseur's safety either during her flight, or when she disembarked, Mexicana had no duty to warn her that a hurricane might hit Cancun the following day.
 
 
 8
 Brasseur argues that the district court's finding that she was not in immediate danger from the hurricane when she arrived at the Cancun airport is not supported by the evidence. A district court's findings of fact are reviewed for clear error. Exxon Co. v. Sofec, Inc., 54 F.3d 570, 576 (9th Cir.1995).
 
 
 9
 Viewed in a light most favorable to Mexicana, the evidence amply supports the district court's finding that Brasseur was not in immediate danger upon her arrival in Cancun. See Lozier v. Auto Owners Ins. Co., 951 F.2d 251, 253 (9th Cir.1991) (in applying the clearly erroneous standard of review, an appellate court views evidence in the light most favorable to the party who prevailed at trial). Captain Olea testified that he had reviewed weather reports and determined that the conditions would be safe for landing at the estimated time of arrival in Cancun. The reports reflected that the center of Hurricane Gilbert was more than 300 miles east-southeast of Cancun at the time the flight departed from Guadalajara and when the flight landed in Cancun. Captain Olea further testified that there was no rain or storm within 20 miles of the airport at the time the flight landed. The record shows that the eye of the hurricane did not pass Cancun until 5:00 a.m. the following morning. This evidence demonstrates that Brasseur was not in immediate danger when Mexicana discharged her at the Cancun airport.
 
 
 10
 Brasseur further asserts, without supporting argument, that Mexicana owed her the duties of a fiduciary, committed breach of contract, and committed fraud and deceit by omitting hurricane storm warnings from its passenger announcements. We have examined these claims. They find no support in the record.
 
 II.
 
 11
 Brasseur maintains that the district court erred in instructing the jury that it must find that Empire Travel was an agent of Brasseur in order to find liability for any acts or omissions of Empire Travel. Brasseur further contends that the district court erred by "giving numerous jury instructions regarding Empire [Travel's] duty which were either misleading or contrary to applicable law." Empire Travel argues that we should not reach the merits of Brasseur's contentions because she waived any objection to the district court's instructions by not objecting at trial.
 
 
 12
 Rule 51 of the Federal Rules of Civil Procedure provides that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." "Rule 51 is designed to bring possible errors to light while there is still time to correct them without entailing the cost, delay and expenditure of judicial resources occasioned by retrials." Bertrand v. Southern Pacific Co., 282 F.2d 569, 572 (9th Cir.1960). To further this purpose, this court has ruled that there is no "plain error" exception in civil cases. Glover v. Bic Corp., 6 F.3d 1318, 1326 (9th Cir.1993); Bertrand, 282 F.2d at 572. Because Brasseur failed to object before the district court, she is precluded from attacking the instructions in this appeal. In United States v. Parsons Corp., this court recognized that Rule 51 also requires a party to object to errors in a special verdict form before the jury retires. 1 F.3d 944, 945 (9th Cir.1993).
 
 
 13
 Brasseur asserts that the district court erred in granting judgment as a matter of law in favor of Empire Travel on her breach of contract claim.[1] We review de novo the district court's grant of judgment as a matter of law. Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994). We view the evidence in a light most favorable to the nonmoving party, and draw all reasonable inferences in its favor. Id.
 
 
 14
 Brasseur contends that the vacation package she purchased from Empire Travel created a contractual relationship with her. She argues that Empire Travel's brochure and the travel vouchers issued to her are evidence of that contract. She further claims that Empire Travel breached this contract by its unjustified failure to provide her with safe accommodations at the Cancun hotel specified in the voucher, and by falsely representing that she would enjoy "gentle" winds.
 
 
 15
 Empire Travel does not dispute that the travel package constituted a contract. Rather, it argues that Brasseur would have received all that she bargained for, but for the storm, which forced the evacuation of the guests at the hotel designated in the brochure.
 
 
 16
 Under California law an unforeseen cause over which the promisor has no control will not excuse performance of a contract, unless the parties have provided for such contingencies in their contract. Caron v. Oliver, 284 P.2d 544, 547 (Cal.Ct.App.1995). The brochure which Brasseur received from Empire Travel expressly provides that Empire Travel is not responsible for any "claims, losses, damages, costs of expenses arising out of injury ... inconvenience, loss of enjoyment, upset, disappointment, distress or frustration, whether physical or mental resulting from ... weather or other factors beyond our control." This contract provision excuses Empire Travel's failure to deliver the promised hotel. Likewise, it precludes Brasseur from recovering for any loss of enjoyment due to the lack of gentle winds.
 
 
 17
 Empire Travel's brochure and vouchers further provide that any services not used by a traveler are not refundable unless Empire Travel completely cancels the trip. This provision precluded Brasseur from recovering damages for the nights she was forced to sleep on the floor of a hotel lobby.
 
 
 18
 AFFIRMED.
 
 
 
 *
 Honorable Owen M. Panner, Senior United States District Judge, for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Brasseur also asserts that the district court erred in refusing to submit to the jury her claims of intentional infliction of emotional distress and fraud. She presents no argument to support this contention. We do not review assertions that are not supported by argument. United States v. Loya, 807 F.2d 1483, 1486-87 (9th Cir.1987)